UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BRIAN SCHAAR,

    Plaintiff,

  v.                                                   Case No. 19-CV-1798

ANDREW M. SAUL,
**Commissioner of Social Security,**

    Defendant.

---

## DECISION AND ORDER

---

Brian Schaar seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") ceasing his entitlement to disability insurance benefits as of July 1, 2016 under Section 223(f) of the Social Security Act. For the reasons below, the Commissioner's decision is reversed and the case is remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

In a decision dated October 20, 2004, Schaar was found disabled beginning on December 15, 2003 due to bipolar disorder. (Tr. 38.) On July 14, 2016, pursuant to a review of his eligibility for disability insurance benefits, Schaar was found no longer disabled as of July 1, 2016. (Tr. 36.) This determination was upheld upon reconsideration after a disability hearing by a State agency Disability Hearing Officer. (*Id.*) Schaar filed a request for a hearing and a hearing was held before an Administrative Law Judge ("ALJ") on December 14, 2018. (Tr. 69–100.) Schaar testified at the hearing, as did Karen Schneider, a vocational expert ("VE"). (Tr. 69.)

In a written decision issued February 25, 2019, the ALJ found that the most recent favorable medical decision finding Schaar disabled was the decision dated October 20, 2004. (Tr. 38.) This is known as the "comparison point decision" ("CPD"). (*Id.*) The ALJ determined that at the time of Schaar's CPD, he had the severe impairment of bipolar disorder. (*Id.*) The ALJ found that after the CPD, Schaar developed the additional impairments of history of right humeral fracture and degenerative disc diseases of the lumbar spine, status post fusion. (*Id.*) The ALJ further found that Schaar did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (Tr. 38–40.)

The ALJ determined that the medical evidence supported a finding that, by July 1, 2016, the medical severity of Schaar's symptoms had decreased and that Schaar had the residual functional capacity ("RFC") to perform light work, with the following limitations: can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally stoop; can frequently reach, handle, and finger with right upper extremity; limited to simple, routine, repetitive tasks; and limited to low stress work environments, defined as jobs with no inflexible or fast paced production requirements, involving only simple work related decision making and no more than occasional changes in work setting. (Tr. 40–42.) The ALJ found that although Schaar had no past relevant work, given his age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that he could perform. (Tr. 46.) As such, the ALJ found that Schaar's disability ended on July 1, 2016 and that Schaar has not become disabled again since that date. (Tr. 47.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Schaar's request for review. (Tr. 1–5.)

# DISCUSSION

## 1. *Applicable Legal Standards*

### 1.1 Medical Improvement

Once a claimant is determined to be under disability, his continued entitlement to benefits is periodically reviewed. 20 C.F.R. § 404.1594(a). A claimant who experiences medical improvement related to his ability to engage in work may lose his eligibility to receive benefits if there is an improvement in the claimant's condition:

> A recipient of benefits . . . may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such a finding is supported by--
>
> (1) substantial evidence which demonstrates that--
>
> (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and
>
> (B) the individual is now able to engage in substantial gainful activity[.]

42 U.S.C. § 423(f). "Medical improvement" is "any decrease in the medical severity of impairment(s) present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled and is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." 20 C.F.R. § 404.1594.

To determine if a claimant continues to be under disability, the regulations prescribe an eight-step sequential inquiry. *See* 20 C.F.R. § 404.1594(f). The evaluation process is intended to determine the following: (1) whether claimant is engaging in substantial gainful activity; (2) if not gainfully employed, whether the claimant has an impairment or

3

combination of impairments which meets or equals a listing; (3) if impairments do not meet a listing, whether there has been medical improvement; (4) if there has been medical improvement, whether the improvement is related to the claimant's ability to do work; (5) if there is improvement related to claimant's ability to do work, whether an exception to medical improvement applies; (6) if medical improvement is related to the claimant's ability to do work or if one of the first groups of exceptions to medical improvement applies, whether the claimant has a severe impairment; (7) if the claimant has a severe impairment, whether the claimant has the RFC to perform past relevant work; and (8) if the claimant cannot perform past relevant work, whether the claimant can perform other work. *Id.*

       1.2    Judicial Review

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing

4

evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2. *Application to this Case*

Schaar argues that the ALJ made several errors in assessing his mental RFC. Specifically, Schaar contends that the ALJ's RFC assessment fails to: (1) adequately account for moderate limitations found by the state agency psychologist; (2) incorporate the state agency psychologist's Section I findings on the Mental Residual Functional Capacity Assessment; and (3) include key limitations opined by the consultative examiner. (Pl.'s Br., Docket # 12.)

First, Schaar argues that the ALJ failed to adequately encapsulate limitations found by the state agency psychologist—namely, moderate limitations in concentration, persistence, or pace—into the RFC or hypothetical question. (Pl.'s Br. at 8.) RFC is the most a claimant can do in a work setting despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004). It is well-established that both "the RFC and the hypothetical question presented to a VE must incorporate the totality of a claimant's limitations, including any deficiencies of concentration, persistence and pace." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). However, the ALJ need not use the exact phrase "concentration, persistence, and pace," as long as any alternative phrasing used by the ALJ clearly excludes tasks that someone with the claimant's limitation would be unable to perform. *Id.* Further, even "generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they 'adequately

5

account for the claimant's demonstrated psychological symptoms' found in the record." *Urbanek v. Saul*, 796 F. App'x 910, 914 (7th Cir. 2019) (quoting *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019)).

In May 2017, state agency psychologist Soumya Palreddy, Ph.D. completed a Mental Residual Functional Capacity Assessment ("MRFCA") to evaluate Schaar's mental impairments. (Tr. 303–06.) In Section I of the MRFCA, Dr. Palreddy found that Schaar had moderate limitations in each of the four areas of mental functioning: understanding and memory, sustained concentration and persistence, social interaction, and adaptation. As to understanding and memory, Dr. Palreddy noted that Schaar was moderately limited in the ability to understand and remember detailed instructions. (Tr. 303.) In the area of sustained concentration and persistence, Dr. Palreddy noted that Schaar had four moderate limitations: the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to work in coordination with or proximity to others without being distracted by them; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 303–04.) Dr. Palreddy also noted that Schaar had moderate limitations in three areas of social interaction: the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 304.) Finally, Dr. Palreddy found that Schaar was moderately limited in one area of adaptation: the ability to respond appropriately to changes in the work setting. (*Id.*)

In Section III of the MRFCA, Dr. Palreddy was prompted to explain the Section I conclusions in narrative form. (Tr. 305.) Instead of providing the requisite narrative, Dr. Palreddy noted that Schaar was previously found to meet Listing 12.04 (due to his bipolar disorder) and wrote: "Please see MIRS comparison," referring to a worksheet that compared the results of Schaar's 2004 and 2017 consultative examinations. (*Id.*) Dr. Palreddy concluded that the file evidence showed significant medical improvement in Schaar's CPD impairments, and thus Schaar was not disabled. (*Id.*) The ALJ assigned great weight to Dr. Palreddy's opinion, explaining that with the exception of Schaar's ability to interact with others, Dr. Palreddy's opinions were consistent with the overall evidence of record and appropriately balanced Schaar's subjective reports with "the largely unremarkable mental status examinations, lack of mental health treatment, and [Schaar's] reported activities." (Tr. 45.) However, the ALJ found that Dr. Palreddy's finding of moderate limitations in the area of social interaction was not consistent with the evidence, as Schaar reported that he got along fine with others and presented appropriately at consultative examinations. (*Id.*)

The ALJ determined that Schaar had only mild limitations in interacting with others, but moderate limitations with regard to concentrating, persisting, or maintaining pace. (Tr. 39–40.) In so finding, as stated above, the ALJ relied on Dr. Palreddy's opinion regarding Schaar's moderate limitations in concentration, persistence, or pace; but he rejected Dr. Palreddy's findings regarding moderate limitations in interacting with others. (Tr. 45.) Schaar argues that the ALJ erred by not incorporating Dr. Palreddy's findings of moderate limitations in "interacting with the general public and dealing with supervisors and coworkers" into the RFC. (Pl.'s Br. at 9.) The error, however, is not in the ALJ's failure to include limitations in the area of social interaction—the ALJ expressly rejected the moderate limitations and

7

explained his reasoning for doing so: both the physical and mental consultative examiners noted that Schaar presented appropriately and Schaar himself reported that he got along fine with others. (Tr. 45.) Rather, the error lies in the fact that the ALJ gave Dr. Palreddy's concentration, persistence, or pace findings great weight, yet the RFC does not account for the moderate limitations found by Dr. Palreddy in Schaar's ability to work in coordination with or proximity to others without being distracted by them. This limitation addresses Schaar ability to concentrate, not his ability to interact with others. This is a distinction without a difference, however, because the remedy is likely the same. If working in proximity to others distracts him, Schaar should have limited interaction with co-workers and supervisors. The RFC, however, contains no such limitation to account for this. In addition, the RFC fails to account for Dr. Palreddy's finding that Schaar has moderate limitations in his ability to maintain attention and concentration for extended periods and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.

Again, the ALJ limited Schaar to simple, routine, repetitive tasks and low stress work environments, defined as jobs with no inflexible or fast paced production requirements, involving only simple work related decision making, and no more than occasional changes in work setting. (Tr. 40–42.) Neither limitation of only simple, routine, repetitive tasks or a low stress work environment captures Schaar's difficulties with concentration, persistence, or pace opined by Dr. Palreddy. *See Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019) ("Though particular words need not be incanted, we cannot look at the *absence* of the phrase 'moderate difficulties with concentration, persistence, and pace' and feel confident this limitation was properly incorporated in the RFC and in the hypothetical question.") (emphasis in original).

Therefore, it is impossible to discern whether Schaar's moderate concentration, persistence, or pace limitations were taken into account by the VE when assessing the availability of jobs. As such, remand is warranted to reassess Schaar's mental RFC.

Similarly, Schaar argues that the RFC and hypothetical question did not account for Dr. Palreddy's Section I findings. (Pl.'s Br. at 10.) He asserts that the specific limitations in Section I had to be addressed in the RFC and hypothetical question, yet the ALJ failed to address moderate limitations in his ability to deal with the public, coworkers, or supervisors; work with or in proximity to others; work a normal workweek or workday; or maintain an adequate work pace. (*Id.* at 11.) Again, Schaar challenges the exclusion of social interaction limitations—dealing with the public, coworkers, or supervisors—that the ALJ expressly rejected and thus did not need to incorporate into the RFC or hypothetical question. However, as for Schaar's ability to work with or in proximity to others without being distracted by them and work a normal workday or workweek without psychologically based symptoms, I agree that the ALJ erred in giving great weight to Dr. Palreddy's opinion but not incorporating the findings into the RFC and hypothetical question. The Seventh Circuit has opined that worksheet observations, while perhaps less useful than narrative findings, cannot be ignored. *Varga v. Colvin*, 794 F.3d 808, 816 (7th Cir. 2015.)

This is especially important in a case such as this, where Dr. Palreddy did not translate the Section I findings into narrative findings in Section III. *See Mischler v. Berryhill*, 766 F. App'x 369, 376–77 (7th Cir. 2019) ("Because Dr. Rozenfeld's assessment fails to account for all of Mischler's limitations, the ALJ was required to account for them himself—in the hypothetical and RFC."). Since Dr. Palreddy did not provide a narrative explanation in Section III, the ALJ should have included the adopted Section I findings into the RFC and

9

hypothetical question. As such, the ALJ failed to build a logical bridge between the evidence and his conclusion.

Finally, Schaar argues that the ALJ failed to incorporate into the RFC and hypothetical question limitations found by consultative examiner Steven Krawiec, Ph. D., who examined Schaar in April 2017. (Pl.'s Br. at 12–13.) Although Schaar reported to Dr. Krawiec that his mood is now controlled, he also expressed that hearing people complain and express negativity was very difficult for him. (Tr. 264.) Schaar stated that he does not do well in an environment with other people and if people have a negative tone of voice, he can "feel it in [his] body." (*Id.*) Further, Schaar explained that when he is around people who are negative, he does not feel that he is in a safe place. (Tr. 265.) Dr. Krawiec diagnosed Schaar with "psychological factors affecting other medical conditions," based on Schaar's reports of mental distress and unpleasantness, as well as physical pain, when around people who are negative. (Tr. 266.)

Dr. Krawiec opined that, given Schaar's comments, Schaar seemingly would not be suited for an occupation where he had to work amongst others "if there was a likelihood that there would be any negativity" and that persisting at tasks and maintaining adequate pace in such a situation might be difficult for Schaar. (*Id.*) Although Schaar would not necessarily have trouble getting along with others in the workplace, Dr. Krawiec stated, he "clearly would be discomforted by the need to work amongst others who were at all negative." (*Id.*) Dr. Krawiec further noted that Schaar easily had adequate cognitive capacity to understand and carry out simple job instructions, and did not display notable difficulty with attention, concentration, or memory. (*Id.*) Finally, Dr. Krawiec stated that workplace changes and

stresses would be inadvisable, as they might exacerbate Schaar's mental health and/or emotional difficulties and subjective experience of pain. (*Id.*)

The ALJ gave Dr. Krawiec's opinion great weight. (Tr. 45.) The ALJ reasoned that Dr. Krawiec's opinions as to Schaar's work capacity were consistent with the overall evidence and "appropriately balance[d] [Schaar's] subjective report that he needs to avoid people who express negatively with his reported improvement in symptoms with lifestyle changes and range of daily activities." (*Id.*) The ALJ stated that Dr. Krawiec's opinions were reflected in the RFC, which provided accommodations for Schaar's moderate limitations in concentration, persistence, or pace and his ability to adapt and manage. (*Id.*) The ALJ explained that these accommodations contemplated any deficits in Schaar's ability to "concentrate, persist, or maintain pace due to perceptions of expressed negativity by other people." (*Id.*)

Schaar asserts that the ALJ failed to incorporate the limitations found by Dr. Krawiec into the RFC and hypothetical question. Although Schaar often conflates his self-reported symptoms with Dr. Krawiec's opinions (Pl.'s Br. at 12), Dr. Krawiec did make findings that were not accounted for in the RFC or hypothetical question. Again, the ALJ adopted Dr. Krawiec's finding that Schaar would have difficulty working amongst others who are negative and difficulty maintaining adequate pace and persistence at tasks in such an environment, but did not account for this finding in the RFC by limiting Schaar's interactions with others. (Tr. 267.) Although the ALJ stated that the RFC accommodated limitations in Schaar's ability to "concentrate, persist, or maintain pace due to perceptions of expressed negativity by other people," there is no logical bridge between any of the RFC's limitations and Dr. Krawiec's findings. (*Id.*) Therefore, remand is appropriate to properly assess Schaar's RFC.

11

## CONCLUSION

Drs. Palreddy and Krawiec opined that Schaar had limitations in his ability to maintain concentration, persistence, or pace. The ALJ gave these opinions great weight, yet the ALJ's RFC assessment and hypothetical question to the VE did not adequately incorporate the concentration, persistence, or pace limitations. Therefore, the case will be remanded.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 22nd day of December, 2020.

BY THE COURT

*Nancy Joseph*

NANCY JOSEPH
United States Magistrate Judge